**The below described is SIGNED.**

**Dated: October 6, 2014**



**WILLIAM T. THURMAN**
**U.S. Bankruptcy Judge**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | **Bankruptcy No. 10-35907** |
| **ALICIA ZISUMBO** | **Chapter 13** |
| Debtor; | **Chief Judge William T. Thurman** |
| In re: | **Bankruptcy No. 11-25031** |
| **RYAN CRAIG BRUMFIELD and SANDRA MARIE BRUMFIELD** | **Chapter 13** |
| Debtors. | **Chief Judge William T. Thurman** |

### MEMORANDUM DECISION

The matters before the Court are Alicia Zisumbo's Motion to Sell Property and Pay Off Remaining Balance of the Chapter 13 Plan (the "Zisumbo Motion") and the Chapter 13 Trustee's Motion to Modify the Plan of Ryan Craig Brumfield and Sandra Marie Brumfield (the "Brumfield Motion"). On August 4, 2014, Sarah Olson appeared on behalf of the Chapter 13 Trustee (the "Trustee"), Jeremy McCullough appeared on behalf of the Brumfields, and Aaron Nilsen appeared on behalf of Ms. Zisumbo. The issue in both cases is whether inheritances received post-confirmation by Ms. Zisumbo and the Brumfields (collectively the "Debtors") are property of the respective bankruptcy estates.

The Court has heard oral argument, read the submissions of the parties, and conducted its

own independent research. Based on this, the Court issues the following Memorandum Decision, which constitutes the Court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52, made applicable to these matters by Federal Rules of Bankruptcy Procedure 9014 and 7052.[1]

## I.   JURISDICTION, NOTICE, AND VENUE

The Court has jurisdiction over these contested matters pursuant to 28 U.S.C. §§ 1334(a) and 157. The matters are core proceedings under 28 U.S.C. § 157(b)(2)(A). Venue is appropriately laid in this District under 28 U.S.C. §§ 1408 and 1409. Notice of the hearing was properly given in all respects.

## II.   BACKGROUND

The parties submitted statements of uncontested facts.[2] Although these are two separate Chapter 13 cases, the issues and points of law are nearly equivalent, allowing the Court to issue one decision ruling on both cases. The Court addresses the facts of each case in turn.

### A.   Ms. Zisumbo

Ms. Zisumbo filed for Chapter 13 relief on November 16, 2010.[3] As confirmed, Ms. Zisumbo's Chapter 13 Plan provides for a return to unsecured creditors of the greater of $2,000 or

---

[1] Any of the findings of fact herein are also deemed to be conclusions of law, and any conclusions of law herein are also deemed to be findings of fact, and they shall be equally binding as both.

[2] Case No. 10-35907 (Docket 47) and Case No. 11-25031 (Docket 41).

[3] Case No. 10-35907 (Docket 1).

a 60-month plan base.[4] The 60-month plan base is the greater return in Ms. Zisumbo's case, returning approximately 34.39% to unsecured creditors.[5] The Order Confirming Chapter 13 Plan entered on March 14, 2011 provides that "[a]t confirmation, property of the estate vests pursuant to the terms of the Plan and § 1327."[6] As of July 23, 2014, the Trustee had disbursed a total of $12,197.35 to non-priority unsecured creditors, or approximately 25.11% of the total allowed unsecured claims.[7] The remaining balance as of July 23, 2014 to pay off the unsecured creditors in full is approximately $36,374.56.[8] Thus, with the estimated trustee's commission, the Trustee estimates the amount required to pay off the plan would be approximately $41,000.80.[9] Ms. Zisumbo has yet to complete her 60-month confirmed plan.

Over a year after the date of petition, Ms. Zisumbo's mother passed away on February 7, 2012.[10] Her mother left the interest in her home, located at 139 West Gwen Street, Ogden, Utah (the "Property"), to Ms. Zisumbo's father.[11] Ms. Zisumbo's father passed away on December 18, 2012, and Ms. Zisumbo received title to the Property through probate in July 2013.[12] Subsequently, she

---

[4] Case No. 10-35907 (Docket 11 and 13). The 60-month plan base is whatever amount accumulates through monthly plan payments and tax refunds as provided for in the plan.

[5] Case No. 10-35907 (Docket 47, ¶ 7).

[6] Case No. 10-35907 (Docket 13, ¶ 22).

[7] Case No. 10-35907 (Docket 47, ¶ 12).

[8] *Id*. ¶ 13.

[9] *Id.* ¶ 14.

[10] Case No. 10-35907 (Docket 45, ¶ 3).

[11] *Id.*

[12] *Id.* ¶ 4–5.

petitioned this Court to authorize the sale of the Property for $99,900.[13]

In the Zisumbo Motion, Ms. Zisumbo requested, inter alia, authorization to pay off the remaining balance of her plan in the approximate amount of $6,079,[14] thus providing a return of approximately 34.39% to unsecured creditors consistent with her confirmed plan.[15] The Trustee objected, claiming Ms. Zisumbo should be required to pay the unsecured class in full using the proceeds from her inheritance received post-confirmation. The Court authorized the sale of the Property, which sale resulted in net proceeds of $43,379.61, and ordered the proceeds to be held in Ms. Zisumbo's counsel's trust account until further order from the Court.[16] Ms. Zisumbo claims the proceeds of the sale are not property of the estate and she has yet to file amended schedules to disclose the inheritance.

B.    *The Brumfields*

Ryan Craig Brumfield and Sandra Marie Brumfield filed a Chapter 13 petition on April 8, 2011.[17] Their confirmed Chapter 13 plan requires monthly payments of $80 for a period of 36 months with a minimum pot plan of $1,750 to be distributed pro rata to unsecured creditors.[18] The pro rata return is greater than $1,750 and will return approximately 35% to unsecured creditors,[19]

---

[13] Case No. 10-35907 (Docket 29).

[14] *Id.*

[15] Case No. 10-35907 (Docket 47, ¶ 7).

[16] Case No. 10-35907 (Docket 47, ¶ 10 and Docket 44).

[17] Case No. 11-25031 (Docket 1).

[18] Case No. 11-25031 (Docket 6 and 16). The plan was confirmed without a hearing pursuant to Local Rule 2083-1(j)(3).

[19] *Id.* ¶ 10.

4

whose total allowed claim is $32,747.78.[20] The Order Confirming Chapter 13 Plan entered on August 31, 2011 provides that "[a]t confirmation, property of the estate vests pursuant to the terms of the Plan and § 1327."[21] As of July 21, 2014, the Trustee had disbursed $11,649.37 to non-priority unsecured creditors.[22] To pay the allowed unsecured claims in full, the Brumfields would need to pay approximately $23,445 to the Trustee for distribution to creditors.[23]

In December 2012,[24] Mr. Brumfield's mother, Carol Wheeler Brumfield passed away, leaving $143,293 in cash and a 2009 Kia Spectra valued at $6,000, which the Brumfields received in December 2013 through the Carol Wheeler Brumfield Trust dated February 14, 2012.[25]

In January 2014, Mr. Brumfield, one of the Debtor's herein, passed away, and Ms. Brumfield, as a beneficiary of the term life insurance policies of Mr. Brumfield, received $300,000.[26] On March 26, 2014, Ms. Brumfield amended her bankruptcy schedules to reflect the personal property she received.[27] As stated at oral argument, between a month to two months before filing her amended

---

[20] Case No. 11-25031 (Docket 41, ¶ 11).

[21] Case No. 11-25031 (Docket 16, ¶ 26).

[22] Case No. 11-25031 (Docket 41, ¶ 12).

[23] *Id.* ¶ 13.

[24] The record is not entirely clear whether Mr. Brumfield's mother passed away in December 2012 or 2013, but the stipulated facts, which no party has contested, provide that she passed away in December 2012. Therefore, the Court uses that date. Whether Mr. Brumfield's mother passed away in 2012 or 2013 does not affect the outcome of the Court's analysis.

[25] Case No. 11-25031 (Docket 41, ¶ 4).

[26] *Id.* ¶ 7. The Court notes that the Brumfields' case continues pursuant to Federal Rule of Bankruptcy Procedure 1016.

[27] Case No. 11-25031 (Docket 34).

schedule B, Ms. Brumfield's counsel contacted the Trustee's office by phone and discussed the inheritance. In her amended schedule B, Ms. Brumfield claimed the life insurance proceeds as exempt, which the Trustee has not challenged, but did not claim the inheritance of $143,293 or the Kia Spectra as exempt.[28]

Unlike Ms. Zisumbo's Chapter 13 plan, under which plan payments have yet to be completed, Ms. Brumfield made the last plan payment under her confirmed Chapter 13 plan in April 2014.[29] The Trustee filed the Brumfield Motion on June 16, 2014, before the filing of the Notice of Completed Plan Payments but after the last plan payment.[30] To provide a 100% return to the unsecured class, Ms. Brumfield would have to pay approximately $23,445, whereas under the confirmed plan no further payments would be required.

## III.    DISCUSSION

These cases require an analysis of the plain meaning and interpretation of several Chapter 13 provisions. The provisions may seem at odds with one another; however, the Court believes its analysis herein harmonizes the potential conflict.

The Trustee first argues that the Zisumbo Motion should be treated as a motion to modify the plan under § 1329(a).  Under § 1329(a), a Chapter 13 plan may be modified by the debtor to reduce the time for plan payments.[31] Here, Ms. Zisumbo is requesting an early payoff of the plan, which reduces the length of time for payments to be made under her confirmed Chapter 13 plan. The

---

[28] *Id.*

[29] Case No. 11-25031 (Docket 41, ¶ 15).

[30] Case No. 11-25031 (Docket 35).

[31] Section 1329(a)(2).

6

Court deems her motion as one to modify her confirmed plan.

The Trustee next contends that the inheritances received by both Ms. Zisumbo and the Brumfields (collectively the "Debtors") are property of the estate under 11 U.S.C. § 1306(a)(1).[32] As such, they should be used to pay the unsecured creditors.  He further argues that, since the Zisumbo Motion is a motion to modify, the Chapter 13 plan must comply with the best interest of creditors test under § 1325(a)(4), which would require a 100% return to unsecured creditors. As to the Brumfield Motion, the Trustee is the movant requesting modification of the plan under § 1329(a), and he argues that the inheritance constitutes disposable income under § 1325(b), which would require a 100% return to the unsecured creditors.

The Debtors contend that the inheritances are not property of their respective bankruptcy estates because the property of the estates vested in the Debtors upon confirmation of their Chapter 13 plans pursuant to § 1327(b) and the confirmation orders. The Brumfields further argue that even if § 1306(a)(1) provides that the inheritance is property of the estate, the Brumfield Motion was untimely under § 1329(a) because the Brumfields made the final plan payment before the Trustee filed his motion.

The Court will first address the interplay between §§ 1306(a) and 1327(b) and then address if and how the respective Chapter 13 plans can be modified.

A.    *Sections 1306(a) and 1327(b)*

The first issue raised by the Debtors is whether the inheritances received more than 180 days after the date of petition are property of the Chapter 13 estates. Section 541(a)(5) provides that

---

[32] All subsequent references are to Title 11 of the Untied States Code unless otherwise specified.

7

property of the estate includes any interest in property that a debtor "acquires or becomes entitled to acquire *within 180 days after*" or on the date of filing the petition.[33] If the Debtors were in a Chapter 7 case, the inheritances would not be part of the Chapter 7 estate if received more than 180 days after the date of petition. However, in a Chapter 13 case, § 1306(a) provides in part: "Property of the estate includes, in addition to the property specified in section 541 of this title all property of the kind specified in such section that the debtor acquires after the commencement of the case but *before the case is closed, dismissed, or converted*."[34] A basic rule of statutory construction is that the specific governs the general,[35] especially when the provisions are part of the same statutory scheme.[36] The language of § 1306 is clear: any property as specified in § 541 received after the commencement of the case but before the case is closed, dismissed, or converted is property of the estate. In a Chapter 13 case, §1306(a) governs the general provision of § 541(a)(5), and the 180-day language of § 541(a)(5) does not apply in a Chapter 13 case.

In reaching this conclusion, the Court finds guidance from the Tenth Circuit Bankruptcy Appellate Panel (the "Tenth Circuit BAP"). The Tenth Circuit BAP explained in *In re Vannordstrand* that § 1306(a) "broadens the definition of estate property" to include any property specified in § 541 before the case is closed, dismissed, or converted.[37] The Tenth Circuit BAP's

---

[33] Section 541(a)(5) (emphasis added).

[34] Section 1306(a) (emphasis added).

[35] *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384 (1992) ("[I]t is a commonplace of statutory construction that the specific governs the general.").

[36] *See HCSC-Laundry v. United States*, 450 U.S. 1, 6 (1981) (explaining that the specific governs the general, especially when the statutes are "interrelated and closely positioned").

[37] *Vannordstrand v. Hamilton (In re Vannordstrand)*, Nos. KS-05-091, 02-40431-13, 2007 WL 283076, at *1 (B.A.P. 10th Cir. Jan. 31, 2007).

decision is persuasive, and this Court determines that § 1306(a) extends the 180-day limitation

provided in § 541: any inheritance received before the case is closed, dismissed, or converted is

property of the Chapter 13 estate.[38]

The more difficult issue presented, however, is the interplay between §§ 1306(a) and 1327(b).

The Tenth Circuit Court of Appeals and the Tenth Circuit BAP have not directly ruled on the issue.[39]

Section 1327(b) provides: "Except as otherwise provided in the plan or the order confirming the

plan, the confirmation of a plan vests all of the property of the estate in the debtor." Here, unlike in

*In re Vannordstrand* where the debtor's plan provided for vesting upon discharge,[40] each order

confirming the Debtors' plans provides that "[a]t confirmation, property of the estate vests pursuant

to the terms of the Plan and § 1327."[41] Neither the Zisumbo plan nor the Brumfield plan addresses

vesting.

Although § 1306(a) provides that property received after the date of petition but before the

closure, dismissal, or conversion of the case is property of the Chapter 13 estate, some courts have

---

[38] *See also Carroll v. Logan (In re Carroll)*, 735 F.3d 147, 151 (4th Cir. 2013) ("The statutes' plain language manifests Congress's intent to expand the estate for Chapter 13 purposes by capturing the types, or 'kind,' of property described in Section 541 (such as bequests, devises, and inheritances), but not the 180-day temporal restriction.").

[39] *See United States v. Richman (In re Talbot)*, 124 F.3d 1201, 1207 n.5 (10th Cir. 1997) ("This court notes that contrary to the assertions of the IRS and the acquiescence of the Trustee, it is not without question that the vesting provisions of § 1327(b) operate to grant absolute 'ownership' of estate property to the debtor upon confirmation of a Chapter 13 plan."); *see also In re Vannordstrand*, 2007 WL 283076, at *2 (noting that because the Chapter 13 plan at issue provided for a delay in vesting until discharge, the court could "affirm the bankruptcy court without deciding whether vesting under § 1327(b) is equivalent to ownership").

[40] *In re Vannordstrand*, 2007 WL 283076, at *2.

[41] Case No. 10-35907 (Docket 13, ¶ 22) and Case No. 11-25031 (Docket 16, ¶ 26).

read the vesting provision of § 1327(b) to extinguish the Chapter 13 estate, thus rendering § 1306(a)

inoperable unless otherwise provided for in the plan.[42] This is commonly referred to as the "estate

termination approach." Courts have used three other approaches. The "estate preservation approach"

reasons that all property of the Chapter 13 estate remains as such until one of the three events listed

in § 1306 occurs, thus rendering § 1327(b) inoperable.[43] The "estate transformation approach" argues

that the Chapter 13 estate consists only of the property necessary to fund the Chapter 13 plan and all

other property vests in the debtor.[44] Lastly, the First Circuit and the Eleventh Circuit have followed

the "modified estate preservation approach."[45] The modified estate preservation approach holds that

property of the estate at the time of confirmation vests in the debtor free and clear of all liens

pursuant to § 1327(b) and (c),[46] but the estate does not cease to exist and it is replenished by regular

---

[42] *See Oliver v. Toth (In re Toth)* 193 B.R. 992, 996 (Bankr. N.D. Ga. 1996) (holding that after-acquired property did not become property of the estate because § 1327 ends the Chapter 13 estate).

[43] *Security Bank of Marshalltown v. Neiman*, 1 F.3d 687, 691 (8th Cir. 1993) ("[T]he clear language of § 1306 demonstrates that confirmation of a Chapter 13 plan is not relevant to determining whether property is or is not property of the estate. The relevant events in this determination are commencement of the case and either dismissal, closing or conversion of the case.") (quoting *In re Aneiro*, 72 B.R. 424, 428–29 (Bankr. S.D. Cal. 1987)).

[44] *Black v. U.S. Postal Serv. (In re Heath)*, 115 F.3d 521, 524 (7th Cir. 1997) (addressing the interplay between §§ 1306(a)(2) and 1327(b), and explaining that the two sections "mean simply that while the filing of the petition for bankruptcy places all the property of the debtor in the control of the bankruptcy court, the plan upon confirmation returns so much of that property to the debtor's control as is not necessary to the fulfillment of the plan").

[45] *See Waldron v. Brown (In re Waldron)*, 536 F.3d 1239 (11th Cir. 2008); *Barbosa v. Solomon*, 235 F.3d 31 (1st Cir. 2000).

[46] Section 1327(c) provides that "the property vesting in the debtor under [§ 1327(b)] is free and clear of any claim or interest of any creditor provided for by the plan."

10

income and post-petition after-acquired assets as provided for in §§ 1306(a) and 541.[47]

Sections 1306(a) and 1327(b) are part of a larger statutory scheme, the Bankruptcy Code. "[S]tatutory language cannot be construed in a vacuum."[48] Reading § 1327(b) in harmony with other provisions of the Bankruptcy Code makes it clear that the vesting provision does not extinguish the Chapter 13 estate as argued in the estate termination approach. As illustrative of this conclusion, § 348(f)(2) provides: "If a debtor converts a case under chapter 13 of this title to a case under another chapter under this title in bad faith, the property of the estate in the converted case shall consist of the property of the estate as of the date of conversion." A debtor may convert his case from one under Chapter 13 to one under another chapter at any time.[49] From the plain reading of § 348(f)(2), whether before or after confirmation, the Chapter 13 estate exists until the closure, conversion, or dismissal of the case. Accordingly, the Court rejects the estate termination approach and determines that § 1327(b) does not extinguish the Chapter 13 estate upon confirmation.

The Court also disagrees with the estate preservation approach and the estate transformation approach. Basic statutory interpretation requires that a statute not be construed, if possible, to render

---

[47] *See, e.g.*, *Barbosa*, 235 F.3d at 37 ("The estate does not cease to exist however, and it continues to be funded by the Debtors' regular income and post-petition assets as specified in section 1306(a).").

[48] *Davis v. Mich. Dept. of Treasury*, 489 U.S. 803, 809 (1989); *see also United States v. Hinckley* 550 F.3d 926, 933–34 (10th Cir. 2008) ("[W]e must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.") (quoting *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 455 (1993)).

[49] Section 1307(a).

any portion of it inoperable.[50] In this Court's opinion, the estate preservation approach does just that

to § 1327(b). The term "vests" is not a defined term under the Bankruptcy Code, thus the Court gives

the term its ordinary meaning.[51] The ordinary meaning of "vest" is "to confer ownership (of property)

upon a person" or "to invest (a person) with the full title to property."[52] The Court believes that to

hold that the Chapter 13 estate continues unaltered and the property does not become property of the

debtor until the case is closed, dismissed, or converted completely disregards § 1327(b). Similarly,

the Court is persuaded that the estate transformation approach misconstrues both §§ 1306(a) and

1327(b). "It is a fundamental canon of statutory construction that the words of a statute must be read

in their context and with a view to their place in the overall statutory scheme."[53] The estate

transformation approach attempts to find a middle ground, but, in the view of the Court, it fails to

give full meaning to either provision within the Bankruptcy Code. In the Court's opinion, the

concept that only property necessary to effectuate the plan remains property of the estate is contrary

to the plain language of § 1327(b). The plain language provides that property of the estate vests in

the debtor upon confirmation, not that property required to carry out the plan is exempted from

vesting. Further, similar to the estate termination approach, this approach does not give full weight

to § 1306(a). Section 1306(a) provides that the bankruptcy estate is augmented by after-acquired

---

[50] *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.") (internal quotation marks and citation omitted).

[51] *Hamilton v. Lanning*, 560 U.S. 505, 513 (2010) ("When terms used in a statute are undefined, we give them their ordinary meaning.") (quotations and citation omitted).

[52] Black's Law Dictionary (9th ed. 2009).

[53] *Davis*, 489 U.S. at 809.

12

post-petition assets, not that the estate is limited to only those assets necessary to carry out the plan as confirmed.

In the view of this Court, the modified estate preservation approach provides the most harmonious reading of §§ 1306(a) and 1327(b). Under this approach, upon confirmation, unless otherwise provided for in the plan, the property of the Chapter 13 estate vests in the debtor free and clear of any liens pursuant to § 1327(b) and (c). This vesting, however, does not extinguish the Chapter 13 estate. Pursuant to § 1306(a), the Chapter 13 estate continues and is augmented by property acquired after confirmation until the closure, dismissal, or conversion of the case. As quoted by the Eleventh Circuit in *In re Waldron*, which is persuasive with the Court, "[i]f Congress had intended for confirmation to so dramatically affect the expansive definition of property of the estate found in [section] 1306, it knew how to draft such a provision."[54]

The Debtors argue, relying on *In re Richardson*,[55] that a reading of §§ 1306(a) and 1327(b) that results in a continuation of the estate would prejudice post-petition creditors. The Debtors contend that assets received post-confirmation should be available to post-petition creditors and that pre-petition creditors should be paid from the resources dedicated to the Chapter 13 plan at confirmation. The argument does not dissuade the Court from its analysis above. First, not all assets received post-confirmation will become property of the estate. Second, debts owed to pre-petition creditors will be discharged once the long-term payment plan is completed, whereas the creditors owed post-petition debts will have access to the debtor's property that is not part of the bankruptcy

---

[54] *In re Waldron*, 536 F.3d 1239, 1242 (11th Cir. 2008) (quoting *Sec. Bank v. Neiman*, 1 F.3d 687, 689–91 (8th Cir. 1993)).

[55] *In re Richardson*, 283 B.R. 783 (Bankr. D. Kan. 2002).

13

estate and may continue collection efforts after the debtor receives a discharge. There may be some

concern for the post-petition creditors, but these concerns do not weigh heavily in construing the

statutory interplay between §§ 1306(a) and 1327(b).

      B.    *Modification of the Confirmed Plans*

Section 1329(a) provides in part: "At any time after confirmation of the plan but before the

completion of payments under such plan, the plan may be modified." Any modification must satisfy

the requirements of § 1325(a).[56] Here, the Zisumbo Motion, as stated previously, seeks to reduce the

time for plan payments. Ms. Zisumbo has not yet completed her monthly plan payments. To modify

her Chapter 13 plan, the modification must comply with § 1325(a)(4) in that the return to unsecured

creditors under the plan cannot be less than the amount that they would receive in a hypothetical

Chapter 7 case.[57] As a result, to satisfy § 1325(a)(4), Ms. Zisumbo's Chapter 13 plan must provide

for a 100% return to unsecured creditors.

Different from the Zisumbo Motion, the Brumfield Motion was filed after the completion of

plan payments. Here, the timing becomes critical. The Trustee argues that the language "completion

of payments under such plan" provided in § 1329(a) is not satisfied until the Trustee submits his

Notice of Completed Plan Payments and the Brumfields file a verification and request for discharge.

He further argues that the Brumfields should not be shielded from a modification of their plan

because they delayed in filing an amended schedule B to disclose the inheritance. The Trustee noted

---

[56] Section 1329(b)(1).

[57] Ms. Zisumbo did not argue that § 1325(a)(4) does not apply to a modified plan. However, in this case, the Court follows the majority of cases that find the "effective date of the plan," as provided in § 1325(a)(4) and as referenced in § 1329(b)(1), is the date of the modification. *See, e.g.*, *In re Auernheimer*, 437 B.R. 405, 408–409 (Bankr. D. Kan. 2010).

14

at oral argument that a phone call was received from the Brumfields' counsel potentially over two months before the amended schedule B was filed, but he argues that his office needed time to assess the character of the disclosure. The Trustee made no further argument regarding equitable tolling and why it should be applied in ruling on the Brumfield Motion.

The plain reading of § 1329(a) unambiguously provides that any modification must be before the completion of payments under the plan, not when the Trustee submits a Notice of Completed Plan Payments or the debtor seeks a verification and request for a discharge. Here, the Brumfield Motion was filed after the completion of plan payments. Based on the plain language of the statute, the plan cannot be modified.

This stated, a debtor has a duty to disclose when he or she receives post-petition assets specified under § 541(a)(5), which includes an inheritance.[58] If such an asset is received, Federal Rule of Bankruptcy Procedure 1007(h) requires a debtor to file a supplemental schedule "within 14 days after the information comes to the debtor's knowledge."[59] Here, Ms. Brumfield received the inheritance in December 2013, and, a month later, her husband passed away. Ms. Brumfield did not file her amended schedule B until March 2014, well beyond the 14-day period provided for in Rule 1007(h), and she did not request permission from the Court to extend the deadline for filing her amended schedule B.

On the other hand, the Trustee did not file the Brumfield Motion until June 2014, which was approximately three months after the final payment on the Brumfields' 36-month plan and approximately four months after Ms. Brumfield filed the amended schedule B. The Trustee manages

---

[58] Fed. R. Bankr. P. 1007(h).

[59] *Id.*

15

a heavy caseload, but the delay in waiting over four months (which does not include the phone call

from Ms. Brumfield's counsel) to bring the Brumfield Motion was nevertheless untimely despite the

delayed disclosure by Ms. Brumfield. The Trustee explained that he needed additional information

regarding the inheritance, but there was no evidence that would support this Court applying equitable

tolling. To a certain extent, it appears that the Trustee is arguing that two wrongs make a right, that

if Ms. Brumfield delayed in filing her amended schedule, then he should be allowed to file an

untimely motion. Here, although Rule 1007(h) provides a deadline for the debtor to disclose an

inheritance, the statutory language of § 1329(a) is clear that a Chapter 13 plan cannot be modified

after the completion of plan payments. The Court is bound to follow the statute. The delay by the

Trustee in this case leads this Court to conclude that the Brumfield Motion, under the unique

circumstances of this case, should be denied.

## IV.    CONCLUSION

Based on the foregoing, the Zisumbo Motion should be treated as a motion to modify her

plan, and the Court determines that the inheritance received more than 180 days after plan

confirmation is property of the Chapter 13 estate. As a result, and in addition to what the Court has

already done in approving the sale, Ms. Zisumbo should turn over to the Trustee all funds from the

proceeds of the sale now held in trust to the extent the funds are required to pay all allowed

unsecured claims in full. However, the Brumfield Motion should be deemed untimely and denied.

16